**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) |
| CPATANK, INC., an Illinois corporation, | ) |
| VITO GLAZERS, individually and as an officer of CPA Tank, Inc., | ) |
| EAGLE WEB ASSETS, INC., an Illinois Corporation, and | ) |
| RYAN EAGLE, individually and as an officer of Eagle Web Assets, Inc., | ) |
| Defendants. | ) |

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain permanent injunctive relief, restitution, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) and 15 U.S.C. § 53(b).

**PLAINTIFF**

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANTS

6. Defendant CPATank, Inc. is an Illinois corporation with its principal place of business at 875 North Michigan Avenue, Chicago, Illinois. CPATank transacts or has transacted business in this district and throughout the United States.

7. Defendant Vito Glazers is the President of CPATank, Inc. At all times material to this Complaint, acting alone or in concert with others, Glazers has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of CPATank, Inc., including the acts and practices set forth in this Complaint. Defendant Glazers resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

8. Defendant Eagle Web Assets, Inc. is an Illinois corporation with its registered business address at 207 Willow Parkway, Buffalo Grove, Illinois. Eagle Web Assets transacts or has transacted business in this district and throughout the United States.

9. Defendant Ryan Eagle is the President of Eagle Web Assets, Inc. At all times material to this Complaint, acting alone or in concert with others, Eagle has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Eagle Web Assets, Inc., including the acts and practices set forth in this Complaint. Defendant Eagle resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

**COMMERCE**

10. At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' BUSINESS ACTIVITIES**

11. Since at least January 2012, using a network of affiliate marketers, Defendants have advertised, marketed, and promoted various products to consumers, including purportedly free merchandise such as $1,000 gift cards to retail companies like Wal-Mart and Best Buy. Defendants arranged for the transmission of tens of millions of unsolicited commercial electronic text messages to the wireless handsets of U.S. consumers for the primary purpose of promoting products and services, including purportedly free merchandise.

**Defendants' Affiliate Marketing**

12. Defendants enter into contracts with merchants who sell products or operate promotions, including the free merchandise offers. Pursuant to these contracts, Defendants agree to promote the products or offers in exchange for commissions or other payments from the merchants. Defendants promote the products or offers through a network of affiliate marketers who act on behalf of and for the benefit of Defendants.

13. Defendants control and monitor their network of affiliate marketers by, among other things, deciding which affiliate marketers to admit to, or expel from, the network, and tracking the consumer traffic and revenue generated by each affiliate marketer. Affiliate marketers seeking to join Defendants' network must request admission, provide background and contact information, and agree to Defendants' terms and conditions. Defendants approve or reject the requests for admission. Defendants also decide which affiliate marketers in the network are allowed to market specific products or offers. The affiliate marketers typically have no direct contact with the merchants who sell the products or operate the promotions.

**Text Message Spam**

14. Many mobile telephone and wireless device service providers operating in the United States (hereinafter "wireless service providers") provide their subscribers with text messaging services. Text messaging services permit the transmission of text messages to wireless handsets from other wireless handsets, electronic mail accounts, and various Internet applications.

15. To transmit a text message to wireless handsets, a sender transmits the message electronically, either directly or indirectly, through a wireless service provider's text message router, which then transmits the message to the recipient through the wireless service provider's interstate wireless network.

16. Text messaging is used by consumers to stay in touch with business colleagues and associates, customers, family members, and friends. Text messaging is also used by numerous employers, schools, police departments, fire departments, and emergency medical services across the country.

17. Defendants' affiliate marketers have promoted products, including offers for purportedly free merchandise, through unsolicited commercial electronic text messages. Many of the unsolicited text messages represent, expressly or by implication, that the consumer receiving the message has won a contest, or has been specially selected to receive a gift or prize. For example, the text messages contain statements such as:

- Dear Walmart shopper, Congratulations you have just won a $1000 Walmart gift card. Click here to claim your gift [website address].

- Dear Walmart shopper, your purchase last month won a $1000 Gift Card, go to [website address] within 24 hours to claim.

- You have been selected to receive a FREE $1000 Best Buy gift card. Go to [website address] to claim your gift.

18. The text messages contain a link to a website address. Consumers who click on the address link contained in the messages are taken to one of various websites operated by third-party merchants. The third-party websites reiterate and expand upon the initial promised free merchandise offer.

19. Defendants receive a commission or other payment from the third-party merchants for causing consumers to visit, provide information to, or make a purchase on, the merchants' websites. Defendants pay a portion of these commissions or other payments to their affiliate marketers.

20. The third-party websites, however, require consumers to participate in multiple other offers to qualify for the promised free merchandise. The consumer usually must complete over ten offers. In most cases, completing an offer entails paying money or incurring some other detriment, such as qualifying and applying for credit cards. Some of the offers have free trial periods, but require consumers to participate for a minimum period of time to qualify for the promised free merchandise. Many of these offers also contain negative option components in which consumers who do not cancel will be billed automatically. In addition, to qualify for the promised free merchandise, consumers are required to provide a variety of personal information, including their name, mailing address, email address, date of birth, cell phone number, and home phone number.

21. In most instances, it is not possible for a consumer to obtain the promised free merchandise without spending money.

22. The text messages sent on behalf of Defendants fail to clearly and conspicuously disclose that consumers must incur expenses or other obligations to obtain the promised free merchandise. The text messages also fail to clearly and conspicuously disclose the costs and obligations associated with participating in the third-party promotions, such as applying and qualifying for credit cards.

23. Many, if not all, of the consumers who received the text message spam sent by or on behalf of Defendants never agreed to be contacted by Defendants or by those sending messages on their behalf.

24. Some of the recipients of text message spam have wireless service plans that require them to pay a fixed fee for each text message received by their wireless handsets. Accordingly, such recipients were required to pay a fee for the receipt of the text message spam.

25. Other recipients of text message spam have wireless service plans that allow them a fixed, limited number of text messages per month without charge beyond their monthly service charge, with text messages that exceed the monthly allowance billed on a per-message basis. Accordingly, many such recipients had their monthly allowance of text messages reduced upon receipt of each text message spam sent by or on behalf of Defendants.

26. The consumer injury caused by Defendants, or by third parties acting on Defendants' behalf, cannot be reasonably avoided by consumers. Text message spam is routinely foisted upon consumers without their advance knowledge or permission.

27. Text message spam sent by or on behalf of Defendants does not create countervailing benefits to consumers or to competition that outweigh the harm caused by Defendants' unlawful activity.

28. Defendants know or should know about the deceptive and unfair practices their affiliates have used to promote the free merchandise offers, including the use of unsolicited text messages representing that the recipient has won a contest, or has been specially selected to receive a gift or prize. Defendants have failed to employ reasonable, appropriate measures to prevent the practices.

## **VIOLATIONS OF THE FTC ACT**

29. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits Aunfair or deceptive acts or practices in or affecting commerce.

30. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

31. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

32. Through the means described in Paragraphs 11-28, Defendants, through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that consumers have won a contest or have been specifically selected to receive a gift or prize that is without cost or obligation.

33. In numerous instances in which Defendants have made the representation set forth in Paragraph 32 of this Complaint, Defendants and their affiliates have failed to disclose or disclose adequately to consumers material terms and conditions of the offer, including:

    a. that consumers must pay money or other consideration to obtain the free gift or prize; and

    b. the costs and obligations to obtain the free gift or prize.

34. Defendants' failure to disclose or disclose adequately the material information described in Paragraph 33 above, in light of the representation described in Paragraph 32 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

35. In numerous instances, Defendants' practice of procuring for their benefit the transmission of unauthorized or unsolicited commercial electronic text messages to the mobile telephones and other wireless devices of consumers in the United States has caused or is likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

36. Therefore, Defendants' practice as described in Paragraph 35 is unfair and violates Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## **CONSUMER INJURY**

37. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment and harm the public interest.

## **THIS COURT'S POWER TO GRANT RELIEF**

38. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

1. Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

2. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

3. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated:   February 19, 2014 			Respectfully submitted,
						JONATHAN E. NUECHTERLEIN
						General Counsel

						/s/  Steven Wernikoff_____
						STEVEN M. WERNIKOFF
						JAMES H. DAVIS
						Federal Trade Commission
						55 West Monroe Street, Suite 1825
						Chicago, Illinois 60603
						(312) 960-5634 [telephone]
						(312) 960-5600 [facsimile]

						Attorneys for Plaintiff
						FEDERAL TRADE COMMISSION