## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) |
| CPATANK, INC., an Illinois corporation, | ) |
| VITO GLAZERS, individually and as an officer of CPA Tank, Inc., | ) |
| EAGLE WEB ASSETS, INC., an Illinois Corporation, and | ) |
| RYAN EAGLE, individually and as an officer of Eagle Web Assets, Inc., | ) |
| Defendants. | ) |

Case No. 14-cv-1239

Judge Milton I. Shadur

Magistrate Judge Arlander Keys

## STIPULATED FINAL JUDGMENT AND ORDER FOR
## PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint

for Permanent Injunction and Other Equitable Relief ("Complaint") in this matter, pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The

Commission and Defendants stipulate to entry of this Stipulated Final Judgment and Order for

Permanent Injunction and Other Equitable Relief ("Order") to resolve all matters in dispute in

this action between them.

**NOW THEREFORE**, Plaintiff and Defendants, having requested the Court to enter this

Order, and the Court having considered the Order reached between the parties, **IT IS HEREBY**

**ORDERED, ADJUDGED, AND DECREED** as follows:

- 1 -

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants have participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in the course of arranging for the transmission of unsolicited commercial electronic text messages offering to consumers purportedly free merchandise, such as $1,000 gift cards to large retailers.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney's fees.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.     **"Affiliate"** means any person, including third-party marketers, who participates in an affiliate program.

2.     **"Affiliate Network"** means any person who provides another person with affiliates for an affiliate program or whom any person contracts with as an affiliate to promote any good or service.

- 2 -

3.      **"Affiliate Program(s)"** means (a) any arrangement under which any marketer or seller of a good or service pays, offers to pay, or provides or offers to provide any form of consideration to any Defendant, either directly or through an affiliate network, to (i) provide the marketer or seller with, or refer to the marketer or seller, potential or actual customers; or (ii) otherwise market, advertise, or offer for sale the product or service on behalf of the marketer or seller; or (b) any arrangement under which any Defendant pays, offers to pay, or provides or offers to provide any form of consideration to any third party, either directly or through an affiliate network, to (i) provide any Defendant with, or refer to any Defendant, potential or actual customers; or (ii) otherwise market, advertise, or offer for sale any good or service on behalf of any Defendant.

4.      **"Corporate Defendants"** means CPATank, Inc., Eagle Web Assets, Inc., and their successors and assigns.

5.      **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

6.      **"Individual Defendants"** means Vito Glazers and Ryan Eagle.

7.      **"Person"** or **"persons"** includes a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

8.      **"Plaintiff"** means the Federal Trade Commission ("FTC" or "Commission").

9.      **"Unauthorized or Unsolicited Commercial Electronic Text Message"** means an unauthorized or unsolicited text message the primary purpose of which is a commercial

advertisement or promotion of a commercial product or service (including the content on an Internet website operated for commercial purposes).

## I.

## BAN ON UNAUTHORIZED OR UNSOLICITED COMMERCIAL ELECTRONIC TEXT MESSAGES

**IT IS ORDERED** that Defendants, whether acting directly or indirectly, are permanently enjoined from making or initiating, or procuring the transmission of, or assisting others in making or initiating, or procuring the transmission of, unauthorized or unsolicited commercial electronic text messages to mobile telephones or other wireless devices.

## II.

## PROHIBITED BUSINESS PRACTICES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any good or service, are permanently restrained and enjoined from:

A.     Misrepresenting, or assisting others in misrepresenting, any material fact, expressly or by implication, including, but not limited to:

        1.     that a good or service is "free;"

        2.     that a good or service is without cost or obligation;

        3.     that consumers have won a contest or have been selected to receive a gift or prize;

- 4 -

4.    that consumers' personal information is being collected to send consumers merchandise;

5.    the purpose for which consumers are providing personal information;

6.    that personal information submitted by consumers will not be sold or shared with third parties;

7.    the extent to which the privacy and confidentiality of consumers' personal information is maintained and protected, including, but not limited to:

a.    the purposes for which that information is collected and disclosed; and

b.    the extent to which consumers' personal information is made or has been made accessible to third parties;

8.    the total cost to purchase, receive, or use the good or service;

9.    any material restrictions, limitations, or conditions to purchase, receive, or use the good or service;

10.    any material aspect of the performance, efficacy, nature, or central characteristics of the good or service; and

11.    any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service.

B.    Failing to disclose, or assisting others in failing to disclose, clearly and prominently, the material terms and conditions of any offer, including, but not limited to:

1.    in any text message, email, or online advertisement, and on any landing page associated with such text message, email, or online advertisement, that contains any direct

- 5 -

or implied representation that a good or service is free or is a gift or prize, failing to disclose, in the same color, font, and size, and within close proximity to such representation, that a purchase is required, or that purchases are required, to obtain such gift or prize, when such is the case; and

  2.  on any landing page associated with any direct or implied representation that a good or service is free or is a gift or prize, failing to disclose, in a clear and conspicuous manner:

    a.  a list of the monetary obligations a consumer is likely to incur to obtain the advertised gift or prize; and

    b.  a list of any non-monetary obligations a consumer is likely to incur to obtain the advertised gift or prize, such as having to apply and qualify for credit cards or an automobile loan.

  C.  Failing to, in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any goods or services through an affiliate network or program that Defendants own, operate, or control, in whole or in part, directly or indirectly:

  1.  Require each affiliate and/or affiliate network to provide the following identifying information:

    a.  In the case of a natural person, the affiliate's or affiliate network's first and last name, physical address, country, telephone number, email address, and complete bank account information as to where payments are to be made to that person;

    b.  In the case of a business entity, the affiliate's or affiliate network's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email

address for at least one natural person who owns, manages, or controls the affiliate or affiliate network, and the complete bank account information as to where payments are to be made to the affiliate or affiliate network;

           c.      If Defendants have access to certain affiliates only through an affiliate network, then Defendants shall contractually require each affiliate network to obtain and maintain from those affiliates the identifying information set forth in Subsection C.1.a and C.1.b of this Section prior to the affiliate's or affiliate network's participation in any Defendant's affiliate program.

           2.      As a condition of doing business with any affiliate or affiliate network or such affiliate or affiliate network's acceptance into any Defendant's affiliate program: (a) provide each such affiliate or affiliate network a copy of this Order; (b) obtain from each such affiliate or affiliate network a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order; and (c) clearly and conspicuously disclose in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any affiliate or affiliate network and forfeiture of all monies owed to such affiliate or affiliate network; *provided, however*, that if Defendants have access to certain affiliates only through an affiliate network, then Defendants shall contractually require that the affiliate network provide the information required by this Subsection to each of those affiliates and retain proof of the same prior to any such affiliate being used in any Defendant's affiliate program; and if Defendants should acquire an entity that has an existing program of selling through affiliates, the entity must complete all steps in this Subsection prior to Defendants' acquisition of the entity.

- 7 -

3.     Require that each affiliate or affiliate network, prior to the public use or dissemination to consumers of any marketing materials, including, but not limited to, websites, emails, and pop-ups used by any affiliate or affiliate network to advertise, promote, market, offer for sale, or sell any goods or services, provide Defendants with the following information: (a) copies of marketing materials to be used by the affiliate or affiliate network, including text, graphics, video, audio, and photographs; (b) each location the affiliate or affiliate network maintains, or directly or indirectly controls, where the marketing materials will appear, including the URL of any website; and (c) for hyperlinks contained within the marketing materials, each location to which a consumer will be transferred by clicking on the hyperlink, including the URL of any website.  Defendants shall also require each affiliate or affiliate network to maintain and provide to Defendants upon request records of the dates when the marketing materials are publically used or disseminated to consumers.  *Provided, however,* that if Defendants have access to certain affiliates only through an affiliate network, then Defendants shall contractually require that the affiliate network obtain and maintain the same information set forth above from each of those affiliates who are part of Defendant's affiliate program prior to the public use or dissemination to consumers of any such marketing materials, and provide proof to Defendants of having obtained the same.

4.     Promptly review the marketing materials specified in Section II.C.3 above as necessary to ensure compliance with this Order.  Defendants shall also promptly take steps as necessary to ensure that the marketing materials provided to Defendants under Section II.C.3 above are the marketing materials publically used or disseminated to consumers by the affiliate or affiliate network.  If Defendants determine that use of any marketing materials does not

- 8 -

comply with this Order, Defendants shall inform the affiliate or affiliate network in writing that approval to use such marketing materials is denied and shall not pay any amounts to the affiliate or affiliate network for such marketing, including any payments for leads, "click-throughs," or sales resulting therefrom. *Provided, however,* that if Defendants have access to certain affiliates only through an affiliate network, then Defendants shall contractually require that the affiliate network comply with the procedures set forth in this Subsection as to those affiliates.

5.      Promptly investigate any complaints that Defendants receive through any source to determine whether any affiliate or affiliate network is engaging in acts or practices prohibited by this Order, either directly or through any affiliate that is part of any Defendant's affiliate program.

6.      Upon determining that any affiliate or affiliate network has engaged in, or is engaging in, acts or practices prohibited by this Order, either directly or through any affiliate that is part of any Defendant's affiliate program, immediately:

a.      Disable any connection between the affiliate program and the marketing materials used by the affiliate or affiliate network to engage in such acts or practices prohibited by this Order;

b.      Halt all payments to the affiliate or affiliate network resulting from such acts or practices prohibited by this Order; and

c.      Terminate the affiliate or affiliate network; *provided, however,* Defendants shall not be in violation of this Subsection if Defendants fail to terminate an affiliate network in a case where Defendants' only access to an affiliate who has engaged in acts or

practices prohibited by this Order is through an affiliate network and the affiliate network immediately terminates the affiliate violating this Order from any Defendant's affiliate program.

## III.

## MONETARY JUDGMENTS AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.     Judgment in the amount of Two Hundred Thousand Dollars ($200,000) is entered in favor of the Commission against Defendants CPATank, Inc. and Vito Glazers, jointly and severally, as equitable monetary relief.  Upon compliance with the obligations of Sections III.C and III.D of this Order, and subject to Sections III.G, III.I, and III.K of this Order, the remainder of the judgment will be suspended.

B.     Judgment in the amount of Two Hundred Thousand Dollars ($200,000) is separately entered in favor of the Commission against Defendants Eagle Web Assets, Inc. and Ryan Eagle, jointly and severally, as equitable monetary relief.  Upon compliance with the obligations of Sections III.E and F of this Order, and subject to Sections III.H, III.J, and III.K of this Order, the remainder of the judgment will be suspended.

C.     Defendants CPATank and Vito Glazers, jointly and severally, are ordered to pay to the Commission Twenty Thousand Dollars ($20,000).  Such payment must be made within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

D.     Defendant Vito Glazers shall immediately take specific steps, as set forth below, to sell all interest in the 2007 Bentley GTC (the "Bentley" or "vehicle") listed on the November 19, 2013 financial statement that Glazers provided to the FTC:

1.  Defendant Glazers shall immediately either (a) place the Bentley for sale through an appropriate broker or automobile listing service at the direction of the Commission; or (b) or return the vehicle to the dealership from which it was obtained;

2.  Defendant Glazers shall notify counsel for the Commission of the amount of any offer to purchase or obtain the Bentley immediately upon receiving each such offer. Acceptance of any such offer shall be in the Commission's sole discretion;

3.  Within three (3) business days of receipt of net proceeds, if any, from the sale of all interests in the Bentley, Defendant shall cause to be wired to the Commission the net proceeds from the sale in accordance with instructions provided by the Commission, and Defendant Glazers shall identify the name(s) and address(es) of the purchaser(s) of the Bentley.

4.  Defendant Glazers agrees that, prior to the sale required by this Subsection, he will maintain insurance on the Bentley in an amount of not less than the full replacement value of the vehicle. In the event that the Bentley suffers any loss or damage covered by such insurance policy, Defendant Glazers shall make such claims as are permitted by the insurance policy and shall assign or remit any insurance payment he receives as a result of such loss or damage to the Commission; and

5.  To secure his performance under this Subsection III.D, Defendant Glazers hereby grants to the Commission a lien on, and security interest in, the Bentley, which terminates upon sale of the vehicle.

E.  Defendants Eagle Web Assets, Inc. and Ryan Eagle, jointly and severally, are ordered to pay to the Commission Ten Thousand Dollars ($10,000). Such payment must be made

- 11 -

within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

   F.  Defendant Ryan Eagle shall immediately take specific steps, as set forth below, to sell all interest in the 2006 Range Rover HSE (VIN# SALME15456A235607) (the "Range Rover" or "vehicle") listed on the November 6, 2013 financial statement that Defendant Ryan Eagle provided to the FTC:

     1.  Defendant Ryan Eagle shall immediately place the Range Rover for sale through an appropriate broker or automobile listing service at the direction of the Commission;

     2.  Defendant Ryan Eagle shall notify counsel for the Commission of the amount of any offer to purchase the Range Rover immediately upon receiving each such offer. Acceptance of any such offer shall be in the Commission's sole discretion;

     3.  Within three (3) business days of receipt of net proceeds, if any, from the sale of all interests in the Range Rover, Defendant shall cause to be wired to the Commission the net proceeds from the sale in accordance with instructions provided by the Commission, and Defendant Ryan Eagle shall identify the name(s) and address(es) of the purchaser(s) of the Range Rover.

     4.  Defendant Ryan Eagle agrees that, prior to the sale required by this Subsection, he will maintain insurance on the Range Rover in an amount of not less than the full replacement value of the vehicle. In the event that the Range Rover suffers any loss or damage covered by such insurance policy, Defendant Ryan Eagle shall make such

- 12 -

claims as are permitted by the insurance policy and shall assign or remit any insurance payment he receives as a result of such loss or damage to the Commission; and

     5.    To secure his performance under this Subsection III.F, Defendant Ryan Eagle hereby grants to the Commission a lien on, and security interest in, the Range Rover, which terminates upon sale of the vehicle.

G.    The Commission's agreement to the suspension of part of the judgment against Defendants CPATank, Inc. and Vito Glazers is expressly premised upon the truthfulness, accuracy, and completeness of such Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

     1.    the Financial Statement of Individual Defendant Vito Glazers signed on November 19, 2013, including the attachments and supplemental information provided in email messages from counsel for Defendant Glazers to the FTC's counsel on November 20, 2013 and December 3, 2013, and December 4, 2013; and

     2.    the Financial Statement of Corporate Defendant CPATank, Inc., signed by Vito Glazers, President of CPATank, Inc., on November 19, 2013, including the attachments and supplemental information provided in emails from counsel for Defendant CPATank to the FTC's counsel on November 20, 2013 and December 3, 2013, and December 4, 2013.

H.    The Commission's agreement to the suspension of part of the judgment against Defendants Eagle Web Assets, Inc. and Ryan Eagle is expressly premised upon the truthfulness, accuracy, and completeness of such Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

- 13 -

1.    the Financial Statement of Individual Defendant Ryan Eagle signed on November 6, 2013, including the attachments and supplemental information provided in email messages from counsel for Defendant Eagle to the FTC's counsel on November 12, 2013, November 27, 2013, and December 2, 2013, and in the declaration executed by Ryan Eagle on December 5, 2013; and

2.    the Financial Statement of Corporate Defendant Eagle Web Assets, Inc. signed by Ryan Eagle, President of Eagle Web Assets, Inc., on November 6, 2013, including the attachments and supplemental information provided in email messages from counsel for Defendant Eagle Web Assets, Inc. to the FTC's counsel on November 12, 2013, November 27, 2013,  December 2, 2013, and in the declaration executed by Ryan Eagle on December 5, 2013.

I.    The suspension of the judgment will be lifted as to Defendants CPATank, Inc. and Vito Glazers if, upon motion by the Commission, the Court finds that such Defendants failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above in Section III.G.

J.    The suspension of the judgment will be lifted as to Defendants Eagle Web Assets, Inc. and Ryan Eagle if, upon motion by the Commission, the Court finds that such Defendants failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above in Section III.H.

K.    If the suspension of the judgment is lifted, the judgment becomes immediately due as to such Defendant in the amount specified in Subsections A or B above, which the parties

- 14 -

stipulate only for purposes of this Section represents the unjust enrichment alleged in the Complaint, less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

      L.     Defendants relinquish dominion and all legal and equitable rights, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

      M.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

      N.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

      O.     Defendants acknowledge that their Taxpayer Identification Number (Social Security Number or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

      P.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it

- 15 -

determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited into the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## IV.

## PROHIBITIONS REGARDING CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      Disclosing, selling, renting, leasing, transferring, using, or benefitting from customer information, including the name, address, birth date, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the marketing or advertising of a good or service offering free gifts or prizes; and

B.      Failing to destroy such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this Order.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

- 16 -

## V.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives

of the Commission in this case and in any investigation related to or associated with the

transactions or the occurrences that are the subject of the Complaint.  Defendants must provide

truthful and complete information, evidence and testimony.  Defendants must appear, and

Corporate Defendants must cause their officers, employees, representatives or agents to appear,

for interviews, discovery, hearings, trials, and any other proceedings that a Commission

representative may reasonably request upon 5 days written notice, or other reasonable notice, at

such places and times as a Commission representative may designate, without the service of a

subpoena.

## VI.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of

this Order:

A. Each Defendant, within 7 days of entry of this Order, must submit to the

Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 3 years after entry of this Order, each Individual Defendant for any business

that such Defendant, individually or collectively with any other Defendants, is the majority

owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of

this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all

employees, agents, and representatives who participate in conduct related to the subject matter of

this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

      C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

**VII.**

**COMPLIANCE REPORTING**

      **IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

      A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

          1.     Each Defendant must: (a) identify the primary physical, postal, email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which such Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each

- 18 -

Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

      2.      Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

      B.      For ten (10) years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

      1.      Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

      2.      Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest and identify the name, physical address, and any Internet address of the business or entity.

- 19 -

C.     Each Defendant must submit to the Commission notice of the filing of any

bankruptcy petition, insolvency proceeding, or any similar proceeding by or against Defendant

within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under

penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by

concluding: "I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's

full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or

sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement,

Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,

Washington, DC 20580. The subject line must begin: *FTC v. CPATank, Inc.*, FTC Matter No.

1323183.

## VIII.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for ten (10)

years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate

Defendants and each Individual Defendant for any business that such Defendant, individually or

collectively with any other Defendant, is a majority owner or controls directly or indirectly, must

create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

- 20 -

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.      Records relating to affiliates or affiliate networks including all names, addresses, and telephone numbers; dollar amounts paid or received; and information used in calculating such payments;

D.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

F.      Copies of all marketing materials, documents, and information received pursuant to Subsection II.C.3 of this Order; and all written approvals or denials of marketing materials made pursuant to Subsection II.C.4 of this Order; and

G.      For any goods or services that any Defendant sells or assists others to sell, a copy of each advertisement or other marketing material regarding such goods or services.

## IX.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested

information, which must be sworn under penalty of perjury; appear for depositions; and produce

documents, for inspection and copying. The Commission is also authorized to obtain discovery,

without further leave of court, using any of the procedures prescribed by Federal Rules of Civil

Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

      B.     For matters concerning this Order, the Commission is authorized to communicate

with each Defendant through undersigned counsel. If such counsel no longer represents the

Defendant, the Commission is authorized to communicate directly with such Defendants.

Defendants must permit representatives of the Commission to interview any employee or other

person affiliated with any Defendant who has agreed to such an interview. The person

interviewed may have counsel present.

      C.     The Commission may use all other lawful means, including posing, through its

representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any

individual or entity affiliated with Defendants, without the necessity of identification or prior

notice. Nothing in this Order limits the Commission's lawful use of compulsory process,

pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

**X.**

**RETENTION OF JURISDICTION**

      **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

      **IT IS SO ORDERED,** this _25_ day of ___February___, 2014.

Honorable Milton I. Shadur
United States District Judge

- 22 -

**SO STIPULATED AND AGREED:**

Date: **FEB. 19, 2014**

Steven M. Wernikoff
James H. Davis
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL 60603
(312) 960-5634 [phone]
Attorneys for Plaintiff Federal Trade Commission

Date: **12-5-2013**

Defendant Vito Glazers, individually and as President of CPA Tank, Inc.

Date: 12/5/13

Gary A. Kanter
Dale & Gensburg, P.C.
200 West Adams Street, Suite 2425
Chicago, IL 60606
(312) 263-2200 [phone]
Attorney for Defendants CPA Tank, Inc. and Vito Glazers

Date: 12/5/13

Defendant Ryan Eagle, individually and as President of Eagle Web Assets, Inc.

Date: 12/5/13

Andrew B. Gordon
Gordon Law Group, Ltd
One First Bank Plaza, #207
Lake Zurich, IL 60047
(847) 580-1279 [phone]
Attorney for Defendants Eagle Web Assets, Inc. and Ryan Eagle

- 23 -