

FILED
10-12-16
OCT 12 2016 PM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) **FILED UNDER SEAL** |
| | ) Case No. 14-cv-1239 |
| v. | ) |
| | ) Judge Milton I. Shadur |
| CPATANK, INC., an Illinois corporation, | ) |
| VITO GLAZERS, individually and as an officer of CPATank, Inc., | ) |
| EAGLE WEB ASSETS, INC., an Illinois Corporation, and | ) |
| RYAN EAGLE, individually and as an officer of Eagle Web Assets, Inc., | ) |
| Defendants. | ) |

**AFFIDAVIT AND CERTIFICATION OF COLIN D. A. MACDONALD IN SUPPORT OF *EX PARTE* MOTION FOR ORDER TEMPORARILY SEALING FILE AND *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER CONTAINING ASSET FREEZE AND LIMITED EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Rule 5.5(d), Colin D. A. MacDonald declares and certifies under penalty of perjury as follows:

1. I am over eighteen years of age and am a citizen of the United States. I am one of the attorneys representing the Federal Trade Commission ("FTC" or "Commission"), Plaintiff in this action. I am a member in good standing of the bars of Oregon and Maryland. My work address is Federal Trade Commission, 600 Pennsylvania Avenue N.W., Mailstop CC-9528, Washington, D.C. 20580.

1

2. Under Rule 65(b)(1) of the Federal Rules of Civil Procedure, the Court may issue a temporary restraining order ("TRO") without notice if the movant's attorney "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

3. I submit this affidavit and certification in support of the FTC's *Ex Parte* Motion for Order Temporarily Sealing File and *Ex Parte* Motion for Temporary Restraining Order Containing Asset Freeze and Limited Expedited Discovery, and Order to Show Cause Why a Preliminary Injunction Should Not Issue, which requests that the Court issue the accompanying TRO without notice to Defendant Vito Glazers.

4. The Commission concurrently is filing: (1) a Motion to Lift Partial Suspension of Judgment ("Suspension Motion"); (2) an *Ex Parte* Motion for Temporary Restraining Order Containing Asset Freeze and Limited Expedited Discovery, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO Motion"); (3) a Motion for Admission *Pro Hac Vice*; and (4) an *Ex Parte* Motion for Order to Temporarily Seal Filings ("Motion to Seal"); as well as supporting documents.

5. The FTC has conducted a confidential investigation into the veracity of Defendant Glazers' November 19, 2013 Federal Trade Commission Financial Statement of Individual Defendant ("Financial Statement").

6. The FTC has not provided notice to Defendant Glazers for the reasons set forth below.

7. The Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Stipulated Judgment") is clear that the Commission's agreement to suspend $180,000 of the $200,000 judgment against Defendant Glazers was "expressly premised upon the truthfulness, accuracy, and completeness of" his Financial Statement.

8. The evidence described in the Suspension Motion, the TRO Motion, and the Motion to Seal, as well as their supporting memoranda, declarations and exhibits, show that Defendant Glazers omitted or misrepresented information about his assets on his Financial Statement by failing to disclose at least $447,722.02 in his possession no more than five months prior to signing the Financial Statement. Glazers withdrew these funds from an account at The PrivateBank and Trust Company in the name of his company Solomon Assets, LLC in June 2013.

9. In 2014, Defendant Glazers appeared on a reality television program entitled *Mystery Millionaire*. The premise of the show is that Glazers is a millionaire who pretends to be penniless on a series of first dates, and the audience sees what happens when the "Mystery Millionaire" reveals his secret. In promotional materials, Glazers purports to own an advertising company valued at $5-10 million and "will only be caught wearing Gucci or Louis Vuitton."

10. The FTC's investigation indicates that Glazers has significant assets, including bank accounts, as well as real and personal property, that could be used to pay the FTC if the Court grants the FTC's Suspension Motion. Glazers could easily conceal or dissipate some or all of these assets before the Court has the opportunity to rule on the Suspension Motion.

11. Accordingly, the FTC seeks an *ex parte* TRO to freeze Defendant Glazers' assets and provide for limited expedited discovery.

12. If Defendant Glazers is notified of this proceeding, he will have the opportunity to hide his assets. This may render ineffective any preliminary injunction or final order this Court may enter during the pendency of and at the ultimate disposition of this matter, irreparably harming the FTC's ability to enforce the Stipulated Judgment.

13. As described more fully in the TRO Motion and accompanying exhibits, the evidence establishes that the FTC is likely to prevail on the merits of its Suspension Motion, and that Defendant Glazers will be liable to the FTC for $180,000 plus interest accruing from the date of the Stipulated Judgment.

14. There is ample evidence that Defendant Glazers has the motivation and opportunity to conceal and dissipate assets. This is shown by evidence that: (1) he misrepresented his assets to the FTC in his Financial Statement in order to shield assets from recovery; (2) he deceived thousands of consumers for his own enrichment in violation of the FTC Act; (3) he has made a habit of misrepresenting his assets for personal gain including on television; and (4) he has previously been convicted of theft by deception. Glazers' willingness to lie to the FTC about his assets under penalty of perjury underscore a lack of respect for the rule of law.

15. Therefore, it is likely that absent *ex parte* relief, Defendant Glazers will dissipate or hide assets, rendering any recovery by the FTC ineffective, irreparably harming the FTC and the public interest.

16. Based on the foregoing facts, and the totality of the evidence contained in the FTC's motions, memoranda, and supporting documents, there is good cause to believe that immediate and irreparable damage to the FTC's ability to obtain complete and effective final relief will occur if the FTC's present filings and any Court Orders issued thereupon are not sealed or if Defendant Glazers receives advance notice of the FTC's Suspension Motion and other filings in any manner.

17. As illustrated by the following examples from recent years, provided on information and belief, it has been the FTC's experience that defendants who have engaged in unfair and deceptive schemes who receive notice of an FTC action or the FTC's intent to file an action,

often dissipate, transfer, and conceal assets, thereby undermining the FTC's efforts to preserve the status quo:

    a. In *FTC v. Goldman Schwartz Inc.*, No. 13-cv-00106 (S.D. Tex. 2013), the FTC obtained an *ex parte* TRO with an asset freeze against numerous corporate and individual defendants, including the companies' owner. Within an hour of being served with the TRO, but before the asset freeze had been fully implemented, the owner withdrew approximately $268,000 from a frozen corporate account. Shortly thereafter, the owner sold approximately $160,000 in securities held in a personal trading account. The next day, the owner's wife withdrew another $18,500 from a non-defendant corporation's account that was subject to the asset freeze. Because the court had issued its asset freeze in advance of these actions, the FTC and a court-appointed monitor were able to recover all of the money.

    b. In *FTC v. Prime Legal Plans LLC*, No. 12-cv-61872 (S.D. Fla. 2012), upon hearing of the TRO including an asset freeze, the Defendants transferred $1.7 million in assets to a girlfriend and a mother. The bank was able to recover most of it, but approximately $200,000 was not returned.

    c. In *FTC v. E.M.A. Nationwide Inc.*, No. 12-cv-02394 (N.D. Ohio 2012), the court denied the FTC's request for an ex parte TRO with corporate asset freeze. Within days, the defendants withdrew more than $152,000 from a bank account.

    d. In *FTC v. Fereidown "Fred" Khalilian*, No. 10-21788 (S.D. Fla. 2010), the Commission sought and obtained an *ex parte* TRO with an asset freeze. But, before the asset freeze could be processed by the banks, an employee withdrew over $70,000 from the company's bank accounts and shared it with the defendant.

The defendant's attorney later convinced him to return less than half of these stolen assets.

e. In *FTC v. Data Med. Capital, Inc.*, No. 99-1266 (C.D. Cal. 2009), the Commission moved for contempt and obtained an *ex parte* TRO and asset freeze against certain defendants. The defendants likely learned of the Commission's investigation and, prior to the Commission's filing, one of the defendants transferred approximately $1 million to a personal bank account. A receiver later appointed pursuant to the *ex parte* TRO traced these assets and returned them to the receivership estate. The receiver's compensation for these tasks, however, reduced the amount available for eventual equitable monetary relief.

f. In *FTC v. Connelly*, No. 06-701 (C.D. Cal. 2006), the court issued an *ex parte* TRO with an asset freeze against one defendant, but issued a noticed Order to Show Cause to the other two individual defendants and set the hearing for the next week. All three defendants then withdrew a total of at least $800,000, some of which was subject to the asset freeze, and most of which was never recovered.

18. For the above reasons, as contemplated by Federal Rule of Civil Procedure 65(b)(1), there is good cause to believe that immediate and irreparable damage will result to the FTC and the public interest from the concealment and/or dissipation of assets if Defendant Glazers receives advance notice of the FTC's Suspension Motion and TRO Motion. Thus, it is in the interest of justice that this Court grant the TRO Motion without notice.

19. For the same reasons, there is good cause to believe that immediate and irreparable harm will result to the FTC and the public interest if Defendant Glazers receives premature notice of the filing of the Suspension Motion or any of the contemporaneously filed motions, memoranda,

or other documents. Thus, the interests of justice would be served if the Commission's Motion for Order to Temporarily Seal Filings is granted.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:	October 12, 2016	Respectfully submitted,

>	/s/ Colin D. A. MacDonald
> Colin D. A. MacDonald
> Counsel for Plaintiff Federal Trade Commission