

**FILED**

10-12-16 *PM*
OCT 12 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CPATANK, INC., an Illinois corporation, | ) |
| | ) |
| VITO GLAZERS, individually and as an officer | ) |
| of CPATank, Inc., | ) |
| | ) |
| EAGLE WEB ASSETS, INC., an Illinois | ) |
| Corporation, and | ) |
| | ) |
| RYAN EAGLE, individually and as an officer of | ) |
| Eagle Web Assets, Inc., | ) |
| | ) |
| Defendants. | ) |

**FILED UNDER SEAL**

Case No. 14-cv-1239

Judge Milton I. Shadur

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF *EX PARTE* MOTION FOR
TEMPORARY RESTRAINING ORDER CONTAINING ASSET FREEZE AND
LIMITED EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE WHY A
PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Defendant Vito Glazers materially misrepresented his financial condition to the Federal

Trade Commission ("FTC" or "Commission") to convince the FTC to agree to suspend the vast

majority of the amount owed on the Stipulated Final Judgment and Order for Permanent

Injunction and Other Equitable Relief ("Stipulated Judgment") in this matter. Dkt. 8. New

evidence indicates that Glazers withheld information regarding at least $447,722.02 in assets –

more than double the full amount of the judgment and more than twenty times the amount he

agreed to pay. Pursuant to Part III(I) of the Stipulated Judgment, the FTC is separately moving

1

the Court to lift the suspension and enter the full judgment against Glazers, *se e* FTC Motion to Lift Partial Suspension of Judgment ("Suspension Motion").

The Commission now requests that this Court enter an *ex parte* temporary restraining order pursuant to Fed. R. Civ. P. 65(b) to prevent Glazers from hiding his assets while the court considers the Suspension Motion. Glazers already lied in a sworn statement to conceal assets from the FTC. Dkt. 8 at 13. The proposed *ex parte* temporary restraining order ("TRO") would prevent Glazers from further concealing assets and preserve them for eventual relief if the FTC prevails in its Suspension Motion, as it likely will.

## I.     FACTS

CPATank, Inc. and Eagle Web Assets, Inc., as well as their respective owners, Vito Glazers and Ryan Eagle, f acilitated a deceptive marketing scheme that sent millions of text messages to consumers without their consent. Dkt. 1 at 3.[1] The Defendants paid "affiliates" to send messages offering free gift cards to consumers and directing those consumers to click on links to various websites. *Id.* at 5-6. Once on those websites, consumers were induced to sign up for negative option subscriptions, turn over personal information, or purchase other products, without knowing they were doing so. *Id.* The parties settled these claims in the Stipulated Judgment, which enjoined Defendants' conduct and required them to pay back their ill-gotten gains. Dkt. 8. Based on the "truthfulness, accuracy, and completeness" of Defendants' financial statements, the FTC agreed to suspend all but $20,000 of the $200,000 judgment against Glazers and his company, CPATank, Inc. *Id.* a t 14.

Glazers's representations to the Commission in his Financial Statement portrayed him as having few assets with which to pay the judgment. Glazers disclosed that he was the sole owner

---

[1] Glazers stipulated that, for the purposes of this litigation, the facts alleged in the FTC's complaint are taken as true. Dkt. 8 at 15.

of four businesses: CPATank; One World Publishing LLC; Solomon Assets LLC; and Guaranteed Global Ltd. *See* Decl. of Anthony Gales, Ex. 1 at 2, Attach. A at 5. He stated that these "[c]losely held companies have little or no value." *Id.* at 9. In his disclosure of bank accounts, Glazers details a combined total of $16,333.93 in four bank accounts. Of this, $1,637.33 was in a personal account, and $14,696.60 was spread between three accounts belonging to two of Glazers's businesses, One World Publishing and Guaranteed Global. *Id.* at 4. He disclosed no cash on hand, *id.*, two vehicles, between which he claimed he had less than $10,000 in equity, *id.* at 6, and $37,500 worth of watches, *id.* at 6. Finally, he disclosed a $273,000 judgment in his favor against his co-defendant in this matter, *see id.* at 5, but expressed doubt that he would ever recover that money and valued it at zero in his asset summary, *id.* at 9.

The Financial Statement called for Glazers to disclose any transfer of assets in excess of $5,000 *within the prior five years*, excluding "ordinary and necessary living and business expenses paid to unrelated third parties." *Id.* at 8. Glazers disclosed only one such transfer: $15,000 given in May of that year to "Sally Mae [sic]" for "Ex-girlfriend, Paid off Car." *Id.*

Glazers's financial statement did not mention $447,722.02 that he withdrew from an account belonging to Solomon Assets LLC, another business he owned, just five months prior to signing the statement. *See* Gales Decl., Ex. 1 at 2, Attach. A. $400,000 of that was withdrawn in a single cash withdrawal on June 20, 2013, Gales Decl., Ex. 1 at 2, Attach.E a t 2-3; G at 1, after the FTC's first interactions with Glazers regarding its investigation of CPATank. Whether the funds remained in his possession at the time of the statement or not, Glazers failed to disclose them as either an asset or an asset transfer.[2]

_____

[2] Glazers's history of fraud for personal benefit goes beyond his use of deceptive tactics at CPATank and his misrepresentations to the FTC under penalty of perjury. At approximately the same time as he was negotiating with the FTC, he was preparing to appear on WeTV's reality

## II. ARGUMENT

The FTC seeks an *ex parte* temporary restraining order containing an asset freeze and limited expedited discovery, as well as an order to show cause why a preliminary injunction should not issue, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).[3] The Court's power under Section 13(b) to enjoin violations of the FTC Act includes the power to grant all necessary ancillary and interlocutory relief. *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571 (7th Cir. 1989); *accord FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 957 (N.D. Ill. 2006). Permissible preliminary relief includes an asset freeze, *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1031 (7th Cir. 1988), and orders for expedited discovery, *see FTC v. QT, Inc.*, No. 03-cv-3578, 2003 WL 22331260, at *1 (N.D. Ill. May 28, 2003). The FTC's burden to obtain preliminary injunctive relief is lower than a private litigant's. *World Travel,*861 F .2d at 1028-29. "'In determining whether to grant a preliminary injunction under section 13(b), a court must 1) determine the likelihood that the Commission will ultimately succeed on the merits and 2) balance the equities.'" *Id.* (quoting *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984)); *FTC v. Lifewatch, Inc.*, No. 15-cv-5781, 2016 WL 1315063, at *16 (N.D. Ill. Mar. 31, 2016). The FTC's proposed TRO is appropriate because the FTC is likely to prevail on the merits of the Suspension Motion and because the equities weigh in its favor.

An *ex parte* TRO is appropriate because "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R.

---

dating show *Mystery Millionaire*. The premise of the show is that Glazers is a the owner of a multimillion dollar marketing company who lies to women on first dates and tells them he is broke in order to test whether he can trust them. *See* Gales Decl., Ex. 1 at 3,Attac h. F at 2.

[3] The FTC initially filed this action under Section 13(b) of the FTC Act. *See* Dkt 1 at 1. In the present litigation, the FTC seeks to effectuate the relief ordered in the Stipulated Judgment, and thus the Court's powers to grant ancillary and interlocutory relief continue.

Civ. P. 65(b)(1).[4] The mere possibility of dissipation of assets is "immediate and irreparable damage" for purposes of granting an *ex parte* TRO with an asset freeze. *See, e.g., FTC v. Harry*, No. 04-cv-4790, 2004 WL 1749515, at *1 (N.D. Ill. July 27, 2004); *QT*, 2003 WL 22331260 at *1. Based on his history of hiding assets from the Commission, it is likely that Glazers will attempt to dissipate his assets before the Court can rule on the Suspension Motion if given prior notice. *Ex parte* preliminary relief is necessary to ensure the FTC can recover on the final judgment, the balance of which Glazers will owe if the FTC prevails on the Suspension Motion.

### A. The FTC is likely to succeed on the merits

The FTC is overwhelmingly likely to prevail on the Suspension Motion. To prevail, the FTC must show that Glazers "failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission" in his Financial Statement. Dkt. 8 at 14. Glazers failed to disclose $447,722.02 that he withdrew from an account belonging to his business. Failure to disclose assets worth more than double the value of the full judgment is unquestionably material.

Glazers clearly misstated the value of his assets on or omitted them from his Financial Statement. Bank statements for the Solomon Assets account, as well as Glazers's own notarized letter, show that Glazers had access to at least $447,722.02 in cash as of June 2013. *See* Gales Decl., Ex. 1 at 2-3, Attach. E at 2-3; Attach. G at 1. However, his Financial Statement does not mention those funds anywhere, either as an asset, *see* Gales Decl., Ex. 1 at 2, Attach. A, or as an asset transfer, *see id.* Regardless of what happened to the $447,722.02 between June and November of 2013, Glazers was required to disclose the existence of the funds and he did not.

---

[4] A certification from counsel regarding the reasons why notice to Glazers should not be required is attached hereto in compliance with Fed. R. Civ. P. 65(b)(2). *See* Certification of MacDonald, Ex. 2.

Glazers's misstatement or omission was clearly material. In agreeing to the Stipulated Judgment, Glazers acknowledged that the Commission agreed to suspend the majority of the judgment based on his representations. Dkt. 8 at 13. A misrepresentation is material if the misinformation is likely to affect a reasonable actor's choice or conduct. *In re N.C.*, 993 N.E.2d 134, 142 (Ill. App. 2013) (citing *Jordan v. Knafel*, 880 N.E.2d 1061, 1069 (Ill. App. 2007)); *see also* Restatement (Second) of Contracts § 162(2) (1981) ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent.").[5] "A misrepresentation is 'material' if the party seeking rescission would have acted differently had he been aware of the fact[.]" *Jordan*, 880 N.E.2d at 1069; *see also* Restatement (Second) of Contracts § 162(2) ("A misrepresentation is material if [. . .] the maker knows that it would be likely to induce the recipient to [manifest assent]."). Glazers's false claims were not only *likely to induce* the Commission to manifest its assent to the suspension, they *actually did so* – and Glazers knew it. Accordingly, the information omitted or misstated was material to the Commission's consideration of the suspension of the judgment.

Given the clear materiality of the omitted information, the FTC is almost certain to prevail on its Suspension Motion. Thus, this factor weighs strongly in favor of entry of the TRO.

**B. The equities weigh strongly in the FTC's favor**

The public interest in preserving assets for the FTC's ultimate recovery far outweigh any private interest Glazers has in being allowed to dissipate them. "[I]n balancing th[e] equities, while private concerns may certainly be considered, public equities must receive far greater

---

[5] The FTC Act standard for materiality bolsters this point. *See In re Thompson Med. Co.*, 104 F.T.C. 648, 788 (1984) (defining material misrepresentations to be statements "likely to affect a consumer's choice of or conduct regarding a product") *aff'd*, 791 F.2d 189 (D.C. Cir. 1986); *Kraft, Inc. v. FTC*, 970 F.2d 311; 322 (7th Cir. 1992) ("A claim is considered material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding a product.'") (quoting *In re Cliffdale Assocs.*, 103 F.T.C. 110, 165 (1984)).

weight." *World Travel*, 861 F.2d at 1029 (citing *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984)); *accord Lifewatch*, 2016 WL 1315063 at *16. There is a strong public equity interest in preserving assets for the equitable monetary relief for violations of a Section 5(a) claim. *FTC v. Sabal*, 32 F. Supp. 2d 1004, 1009 (N.D. Ill. 1998). That is especially true where, as here, that relief has already been ordered by the Court on the parties' stipulation.

By contrast, Glazers's private equitable interest in avoiding a TRO is weak. A person who violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), has no equitable interest in shielding his ill-gotten gains from recovery by the FTC. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *accord Sabal*, 32 F. Supp. 2d at 1009. Glazers stipulated that he violated Section 5(a) of the FTC Act. *See* Dkt. 1 at 7-8 (alleging violations of Section 5(a)); Dkt. 8 at 15 (agreeing that the facts alleged in the Complaint are taken as true in "any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order"). The full $200,000 judgment against Glazers and CPATank is equitable monetary relief for Glazers's violations of the FTC Act. *See* Dkt. 8 at 10. The FTC Act does not require the funds ordered paid as equitable monetary relief be traceable to the illegal conduct. *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 601 (9th Cir. 2016); *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011). Accordingly, Glazers has little legitimate interest in retaining funds that could pay what he owes the FTC for his violations of law. On balance, the equities strongly favor the entry of the TRO.

### C. An asset freeze is proper to prevent dissipation of assets currently in Glazers's possession

The same facts that support the FTC's Suspension Motion bolster the case for an asset freeze. Section 13(b) of the FTC Act empowers the Court to freeze a defendant's assets to ensure their availability for ultimate recovery should the FTC prevail. *See World Travel*, 861

F.2d at 1031; *Harry*, 2004 WL 1749515, at *1. This is particularly appropriate where the FTC can show that concealment or dissipation of assets is likely. *See Harry*, 2004 WL 1749515, at *1; *QT*, 2003 WL 22331260, at *1. To prevail, the FTC need only prove the *possibility* of concealment or dissipation, not the likelihood thereof. *See FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1313 n.3 (S.D. Fla. 2013), *aff'd,* 746 F.3d 1228, 1234 (11th Cir. 2014) ("There does not need to be evidence that assets will likely be dissipated in order to impose an asset freeze.").[6]

Here, dissipation or concealment is near certain. Glazers has a history of deceiving others for personal enrichment. The funds at issue in this matter are the proceeds of deceptive trade practices committed by Glazers and his company. Dkt. 1 at 7. Moreover, Glazers misrepresented his assets – in spite of swearing to the accuracy of his Financial Statement under penalty of perjury – in order to avoid paying the full judgment in 2014. *See supra* at 4. The assets he left out would have been sufficient to pay the judgment twice over. *See id.*[7] Even assuming there were no *dissipation*, this is a person who lied about his assets, so an asset freeze is necessary to ensure an accurate report of the assets available for ultimate recovery.[8]

---

[6] *See also* Minutes of Ex Parte Proceedings in Chambers, *FTC v. Wealth Educators, Inc.*, No. 2:15-cv-2357 (C.D. Cal. Apr. 6, 2015) (citing *Federal Sav. & Loan Ins. Corp. v. Sahni,* 868 F.2d 1096, 1097 (9th Cir. 1989)) ("Further, when a government agency is a movant, the mere 'possibility' (as opposed to likelihood) of dissipation of assets is sufficient to justify a freeze.").

[7] At the same time as he was negotiating with the FTC, he was preparing to appear on a television show whose very premise is lying to people about his wealth. *See* Gales Decl., Ex. 1 at 3, Attach.F .

[8] The FTC will not merely rely upon Glazers's willing compliance with the requested TRO. The FTC intends to serve copies of the requested TRO on financial institutions and any other third parties who may hold assets for Glazers's benefit.

### D. Glazers should be required to provide an accounting of assets currently in his possession and the FTC should be able to obtain Glazers's credit report

The Court can and should order Glazers to account for his assets to ensure the effectiveness of any asset freeze. Section 13(b) of the FTC Act empowers the Court to provide all necessary interlocutory relief to ensure assets are available for recovery. *Amy Travel Serv., Inc.*, 875 F.2d at 571; *accord QT*, 448 F. Supp. 2d at 957. The Commission is empowered to use any of the discovery procedures described under Fed. R. Civ. P. 29, 30, 31, 33, 34, 36, and 45 in monitoring compliance with and enforcing the Stipulated Judgment. Dkt. 8 at 22. Moreover, the Court has the power to alter the timing of discovery under Fed. R. Civ. P. 26(d), particularly where the interests of justice require, *see Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). Additionally, the Court may authorize the FTC to obtain a copy of Glazerss' credit report. *See* 15 U.S.C. § 1681b(a)(1); *see also Harry*, 2004 WL 1749515, at *7.

Glazers's history of hiding assets underscores the necessity of these remedies to effectuate an asset freeze. The proposed accounting, in the form attached hereto as Exhibit 2, is necessary to identify all accounts, real estate, and other assets available to pay an ultimate judgment.

Although necessary, that financial disclosure is not sufficient. Glazers's failure to submit a true, accurate, and complete financial statement when negotiating the Stipulated Judgment, *supra* at 3, underscores the need for independent confirmation through his credit report. Furthermore, by accessing his credit report before Glazers is aware of the TRO, the FTC will be more able to serve appropriate third parties holding Glazers's assets with copies of the asset freeze. Without this information, Glazers could once again hide assets before the FTC is able to secure them.

9

**E. The FTC is likely to suffer immediate and irreparable injury if notice were provided to Glazers before entry of the TRO and asset freeze**

Entry of the TRO *ex parte* is appropriate because Glazers is likely to conceal or dissipate assets and frustrate the FTC's ability to get relief. The Court may issue a TRO without notice where "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). Dissipation of assets that would frustrate eventual recovery is an "immediate and irreparable injury" sufficient for the entry of an *ex parte* TRO with an asset freeze. *Harry*, 2004 WL 1749515, at \*1; *QT*, 2003 WL 22331260, at \*1. Where limited expedited discovery is necessary to effectuate the eventual judgment of the Court, it too should be granted *ex parte*. *See Harry*, 2004 WL 1749515, at \*7. Courts in this District have often granted *ex parte* relief to preserve assets in FTC Act cases. *See, e.g., FTC v. Big Dog Solutions, LLC*, No. 1:16-cv-6607 (N.D. Ill. June 28, 2016) (Blakey, J.); *FTC v. Stark Law, LLC*, No. 1:16-cv-3463 (N.D. Ill. Mar. 22, 2016) (Pallmeyer, J.); *FTC v. Construct Data Publishers*, No. 1:13-cv-1999 (N.D. Ill. Mar. 15, 2013) (Tharp, J.); *FTC v. Am. Credit Crunchers, LLC*, No. 1:12-cv-1028 (N.D. Ill. Feb. 14, 2012) (Guzman, J.); *FTC v. Cent. Coast Nutraceuticals, Inc.*, No. 1:10-cv-4931 (N.D. Ill. Aug. 6, 2010) (Norgle, J.); *FTC v. Asia Pac. Telecom Inc.*, No. 1:10-cv-3168 (N.D. Ill. May 25, 2010) (Hart, J.); *FTC v. API Trade, LLC*, No. 1:10-cv-1543 (N.D. Ill. May 9, 2010) (Guzman, J.); *FTC v. 6555381 Canada Inc.*, No. 1:09-cv-3158 (N.D. Ill. May 27, 2009) (Gettleman, J.); *FTC v. Integration Media Inc.*, No. 1:09-cv-3160 (N.D. Ill. May 27, 2009) (Bucklo, J.); *FTC v. Atkinson*, No. 1:08-cv-5666 (N.D. Ill. Oct. 6, 2008) (Kendall, J.); *FTC v. Data Bus. Solutions Inc.*, No. 1:08-cv-2783 (N.D. Ill. May 14, 2008) (Dow, J.); *FTC v. Spear Sys., Inc.*, No. 1:07-cv-5597 (N.D. Ill. Oct. 3, 2007) (Andersen, J.).

Glazers has already misled the FTC by hiding assets in this matter once, and notice

before the entry of a TRO would give him the opportunity to do so again. Similarly, without

identifying the scope of Glazers's assets to the greatest extent possible, such as through a credit

report, Glazers could withdraw or transfer assets before the FTC can serve the parties holding

Glazers's assets with copies of the TRO. Thus, proceeding *ex parte* is necessary to give any

meaning to the TRO, and it is in the interests of justice to issue the TRO without prior notice to

Glazers.

## III.     CONCLUSION

For the reasons stated herein, the FTC respectfully asks this Court to grant the FTC's

motion for an *ex parte* temporary restraining order containing an asset freeze, limited expedited

discovery, and order to show cause why a preliminary injunction should not issue.[9]

Dated: October 12, 2016                                           Respectfully submitted,


                                                                  /s/ Colin D. A. MacDonald
                                                                  COLIN D. A. MACDONALD*
                                                                  STEVEN M. WERNIKOFF
                                                                  JAMES H. DAVIS
                                                                  Federal Trade Commission
                                                                  600 Pennsylvania Ave. NW
                                                                  Mailstop CC-9528
                                                                  Washington, DC 20580
                                                                  (202) 326-3192, cmacdonald@ftc.gov
                                                                  (312) 960-5630,sw ernikoff@ftc.gov
                                                                  (312) 960-5611, jdavis@ftc.gov

                                                                  Attorneys for Plaintiff
                                                                  FEDERAL TRADE COMMISSION


\* Colin D. A. MacDonald is not a member of the Bar of this Court.  His application for
admission *pro hac vice* is filed contemporaneously with this motion.  Steven M. Wernikoff is à
member of the Trial Bar of this Court and James H. Davis is a member of the Bar of this Court.

---

[9] The FTC is prepared to consolidate the show cause hearing on a preliminary injunction with the
hearing on the Suspension Motion.  *See* Fed. R. Civ. P. 65(a)(2).