

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CPATANK, INC., an Illinois corporation,<br><br>VITO GLAZERS, individually and as an officer of CPATank, Inc.,<br><br>EAGLE WEB ASSETS, INC., an Illinois Corporation, and<br><br>RYAN EAGLE, individually and as an officer of Eagle Web Assets, Inc.,<br><br>Defendants. | **FILED UNDER SEAL**<br><br>Case No. 14-cv-1239<br><br>Judge Milton I. Shadur |

### MEMORANDUM IN SUPPORT OF MOTION TO LIFT
### PARTIAL SUSPENSION OF JUDGMENT

Vito Glazers's deception once again brings this case before the Court. In 2014, the Plaintiff Federal Trade Commission ("FTC" or "Commission") sued Glazers and three other defendants for deceiving thousands of consumers with misleading text messages promising "free" gift cards. The parties settled and the FTC agreed to suspend the vast majority of the Stipulated Judgment[1] against Glazers and his company, CPATank, Inc. ("CPATank"), premised on "the truthfulness, accuracy, and completeness" of Glazers's financial statement. *See* Dkt. 8 at 13. Unfortunately, Glazers's statement was not true, accurate, and complete. Instead, Glazers misstated or omitted information about assets worth more than double the amount of the full

---

[1] Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Stipulated Judgment"), Dkt. 8.

1

judgment. Therefore, pursuant to Sections III.G, III.I, and III.K of the Stipulated Judgment, the FTC moves to lift the suspension and enter the full judgment against Glazers for $200,000, plus interest and less the $20,000 already paid. *Id.* at 14-15.[2]

## I. BACKGROUND

The FTC sued CPATank and Eagle Web Assets, Inc., as well as their respective owners, for a scheme that sent millions of deceptive text messages to thousands of consumers. Dkt. 1 at 3. Defendants paid "affiliates" to send messages offering free gift cards to consumers and directing those consumers to click on links to various websites. *Id.* at 5-6. Once on those websites, consumers were induced to sign up for negative option subscriptions, turn over personal information, or purchase other products. *Id.*[3] The parties settled these claims in the Stipulated Judgment, which enjoined Defendants' illegal conduct and required Defendants to pay back their ill-gotten gains. Dkt. 8. The FTC agreed to suspend the vast majority of the monetary relief provisions, including the balance of the judgment, upon the Defendants meeting certain prerequisites, including payment of $20,000 and submission of true, accurate, and correct representations about their financial conditions. *Id.* at 14.

## II. GLAZERS MISREPRESENTED HIS FINANCES TO THE COMMISSION

### a. Glazers's Individual Financial Statement

On November 19, 2013, Glazers signed the "Federal Trade Commission Financial Statement of Individual Defendant" ("Financial Statement"). *See* Decl. of Anthony Gales, Ex. 1

---

[2] Defendants Eagle Web Assets, Inc. and Ryan Eagle also signed the Stipulated Judgment, however the $200,000 judgment against them is separate from the judgment against CPATank and Glazers. *Id.* This motion does not pertain to Defendants Eagle Web Assets, Inc. or Ryan Eagle.

[3] Pursuant to the Stipulated Judgment, the facts in the Complaint are taken as true for the purposes of "any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order." Dkt. 8 at 15.

2

at 2, Attach. A. The document required Glazers to identify, among other things, all safe deposit boxes, cash on hand, bank accounts, businesses owned, real or personal property, liabilities, asset transfers, and expenses. *Id.* Glazers signed the statement under penalty of perjury. *Id.* at 10.

Glazers's listed very few assets. He disclosed that he was the sole owner of four businesses: CPATank; One World Publishing LLC; Solomon Assets LLC; and Guaranteed Global Ltd. *Id.* at 5. He stated that these "[c]losely held companies have little or no value." *Id.* at 9. In his disclosure of bank accounts, Glazers detailed a total of $16,333.93 in four bank accounts. Of this amount, $1,637.33 was in a personal account, and $14,696.60 was spread between three accounts belonging to two of Glazers's businesses, One World Publishing and Guaranteed Global. *Id.* at 4. He disclosed no cash on hand, *id.*, two vehicles, between which he claimed less than $10,000 in equity, *id.* at 6, and $37,500 worth of watches, *id.* at 6.[4] In sum, Glazers valued his total assets at $166,843 and his liabilities at $125,278. *Id.*

The Financial Statement required Glazers to disclose any transfer of assets in excess of $5,000 within the prior five years, excluding "ordinary and necessary living and business expenses paid to unrelated third parties." *Id.* at 8. Glazers disclosed only one such transfer: $15,000 given in May of that year to "Sally Mae [sic]" for "Ex-girlfriend, Paid off Car." *Id.*[5]

    b. **Glazers's Actual Finances**

Glazers omitted at least one significant asset from his Financial Statement. One of Glazers's companies, Solomon Assets LLC, maintained a bank account at The PrivateBank and Trust Company. *See* Gales Decl., Ex. 1 at 2, Attach. D. On February 9, 2012, the account

---

[4] Finally, he disclosed a $273,000 judgment in his favor against his co-defendant in this matter, *see id.* at 5, but expressed doubt that he would ever recover that money and valued it at zero in his asset summary, *id.* at 9.

[5] The Financial Statement also listed Glazers's liabilities, including the debts owed on his cars, *id.* at 6, $7,330.42 in credit card debt, *id.* at 7, $438 in taxes owed to the state of Illinois, *id.* at 7, and $14,620.10 owed to his lawyers, *id.* at 8.

received $524,388.96 by wire transfer. *Id.* at 30-31. Between then and May 2013, the account had few transactions: a $33,456 wire transfer to "Steve Auto," *id.* at 27-28, and two checks for $24,000 and $2,500 to Guaranteed Global Ltd. (another of his companies), *id.* at 14, 25, leaving a balance of $464,417.96, *id.* at 2. On June 11, 2013, Glazers withdrew $20,000 in cash from the account. *Id.* at 6.

Then, on June 20, Glazers withdrew another $400,000 in cash. *Id.* at 2, 7. In doing so, he signed a notarized letter absolving the bank of any liability arising from his withdrawal of $400,000 in cash and indicating that he would be assisted by a private security guard. Gales Decl., Ex. 1 at 3, Attach. E a t 2. The next day, he made three payments totaling $14,845.94 to "Toyota Pay." *See* Gales Decl., Ex. 1 at 2, Attach.D at 2. Finally, on June 26, the bank informed Glazers that it would close his account and he needed to recover the remaining funds, *see* at 3, Gales Decl., Ex. 1 at 3, Attach. E. at 2, which he did by authorizing a cashier's check payable to Solomon Assets LLC for the remaining $27,722.02. Gales Decl., Ex. 1 at 2 Attach.D at 2, 9.[6] In total, Glazers withdrew at least $447,722.02 in cash and cashier's checks from the Solomon Assets account in the month of June 2013, while negotiating the Stipulated Judgment with the FTC.

Solomon Assets does not engage in any business activities, but rather is a place for Glazers to stash his money. According to Glazers's sworn January 16, 2016 Compliance Report, "Solomon Assets LLC is a limited liability company formed in November 2011 to hold personal and unencumbered assets of the Defendant. Defendant has been at all times the 100% shareholder and sole officer and employee of Solomon Assets LLC." Gales Decl., Ex. 1 at 2, Attach. B at 2.

---

[6] This list of transactions omits small charges that appear to be service fees.

Glazers misrepresented his finances by failing to disclose in his Financial Statement the $447,722.02 taken from the Solomon Assets account. If he retained the cash, he should have disclosed it as cash on hand under Item 9. If he deposited it into another account, he should have disclosed that under Item 9. If he purchased personal or real property with the money, he should have disclosed that under Items 17 or 18, respectively. If he paid, gave, or loaned the money to someone else, he should have disclosed that as an asset transfer under Item 23.[7] If he held the money in the name of one of his businesses, then his statement that his "companies have little or no value" in Item 25 is false.[8]

### III. GLAZERS'S MISREPRESENTATION WAS MATERIAL AND THE SUSPENSION OF THE JUDGMENT AGAINST HIM SHOULD LIFT

Glazers's gross misrepresentation(s) regarding his assets were material to the Commission's decision to agree to the suspension. The Stipulated Judgment is clear that "[t]he Commission's agreement to the suspension of part of the judgment against [. . .] Vito Glazers is expressly premised upon the truthfulness, accuracy, and completeness of" his Financial Statement. Dkt. 8 at 13. According to the Stipulated Judgment, the suspension should lift "if, upon motion by the Commission, the Court finds that [Glazers] failed to disclose any material

---

[7] Item 23 allowed Glazers to "exclude ordinary and necessary living and business expenses paid to unrelated third parties," but that clause provides no basis for this omission. Glazers admits that Solomon Assets was merely a device to hold his assets, *see* Gales Decl., Ex. 1 at 2, Attach. B at 2, so it would have negligible ordinary and necessary business expenses. Thus, Solomon Assets could not truly have been valueless unless it had transferred away the $447,722.02 outside the ordinary course of business.

[8] The FTC is not alone at the receiving end of Glazers's dubious claims of poverty. At nearly the same time as he was negotiating the Stipulated Judgment, Glazers was preparing to appear on a reality dating show called *Mystery Millionaire*. *See* Gales Decl., Ex. 1 at 3, Attach. 5. The premise of the show is that Glazers is a millionaire who pretends to be penniless on a series of first dates, and the audience sees what happens when the "Mystery Millionaire" reveals his secret. In promotional materials, Glazers purports to own an advertising company valued at $5-10 million and "will only be caught wearing Gucci or Louis Vuitton." *See id.* Glazers's episode of the show ultimately aired on July 11, 2014 – less than five months after the entry of the Stipulated Judgment. *See id.*

5

Case: 1:14-cv-01239 Document #: 23 Filed: 10/12/16 Page 6 of 8 PageID #:115

asset, materially misstated the value of any asset, or made any other material misstatement or omission in the [Financial Statement]." *Id.* at 14. Glazers did just that by failing to disclose at least $447,722.02 in assets. Glazers's failure to disclose assets worth more than double the full value of the judgment is material under any standard.

Glazers's misstatements are clearly material because they would reasonably affect the Commission's decision regarding the settlement. A misrepresentation is material if the misinformation is likely to affect a reasonable actor's choice or conduct. *In re N.C.*, 993 N.E.2d 134, 142 (Ill. App. 2013) (citing *Jordan v. Knafel*, 880 N.E.2d 1061, 1069 (Ill. App. 2007)); *see also* Restatement (Second) of Contracts § 162(2) (1981) ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent.").[9] "To be material, the representation need not have been the paramount or decisive inducement, so long as it was a substantial factor." *Jordan*, 880 N.E.2d at 1069 (internal quotations omitted); *cf.* Restatement (Second) of Contracts § 167 cmt. a ("It is not necessary that this reliance have been the sole or even the predominant factor in influencing his conduct. It is not even necessary that he would not have acted as he did had he not relied on the assertion.").[10]

Here, the hidden amount was larger than the total judgment. Under these facts, no reasonable person would settle for ten cents on the dollar. The withdrawal alone shows that, near the time of the Stipulated Judgment, Glazers had access to large sums of money. Even if Glazers

---

[9] The FTC Act standard for materiality bolsters this point. *See In re Thompson Med. Co.*, 104 F.T.C. 648, 788 (defining material misrepresentation to be statements "likely to affect a consumer's choice of or conduct regarding a product") *aff'd*, 791 F.2d 189 (D.C. Cir. 1986); *Kraft, Inc. v. FTC*, 970 F.2d 311; 322 (7th Cir. 1992) ("A claim is considered material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding a product.'") (quoting *Cliffdale Assocs.*, 103 F.T.C. 110, 165 (1984)).

[10] *Cf. In re Novartis Corp.*, 127 F.T.C. 560, 695 (1999) *aff'd* 223 F.3d 783 (D.C. Cir. 2000) ("[I]n order to be material, a claim does not have to be the *only* factor or the *most* important factor likely to affect a consumer's purchase decision, it simply has to be *an* important factor.").

no longer had the money, he was obligated to disclose it. The Commission provided numerous places on the Financial Statement, in any one of which the money could have been disclosed.[11] A reasonable actor in the Commission's position would certainly consider recent access to enough money to pay the entire judgment twice over important in deciding whether to agree to the suspension.[12] Thus, its omission or misrepresentation was material.

Regardless of what happened to the $447,722.02 after Glazers withdrew it from his account, he either failed to disclose a material asset, materially misstated the value of an asset, or made another material misstatement or omission in his Financial Statement. Whatever the case, the Stipulated Judgment is clear about the result of such misrepresentations or omissions. Accordingly, the suspension should be lifted and judgment should entered in favor of the FTC in the amount of $180,000 plus interest accruing from the date of the Stipulated Judgment.

---

[11] Under the FTC Act standard, Glazers's claims are presumptively material. Express claims are presumed material, *Thompson Med. Co.*, 104 F.T.C. at 816; *Kraft*, 970 F.2d 322-23 (citing *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 392 (1965)), as are intentional claims, *Novartis Corp.*, 127 F.T.C. at 686 (1999), *aff'd* 223 F.3d 783 (D.C. Cir. 2000). In signing the Financial Statement that instructed him to list each asset, liability, and transfer, Glazers made the express claim that the form was "true and correct." *See* Gales Decl., Ex. 1 at 2, Attach. A at 10. Moreover, Glazers knew the Commission relied "upon the truthfulness, accuracy, and completeness of" his Financial Statement in agreeing to the suspension, Dkt. 8 at 13, and he misstated or omitted information regarding his assets with the intent of inducing that agreement. Glazers's misstatements were both express and intentional, and thus presumptively material.

[12] Furthermore, in agreeing to the Stipulated Judgment, Glazers acknowledged that the Commission agreed to suspend the majority of the judgment based on his representations. Dkt. 8 at 13. Thus, Glazers's false claims were not only *likely to induce* the Commission to manifest its assent to the suspension, they *actually did so* – and Glazers knew it. Regardless of what a reasonable actor would likely do, "[a] misrepresentation is material if [. . .] the maker knows that it would be likely to induce the recipient to [manifest assent]." Restatement (Second) of Contracts § 162(2). Glazers knew that his claims of poverty were the reason that the FTC agreed to suspend part of the judgment, and his withdrawal of those funds during the pendency of this investigation underscores that he knew they would affect the Commission's agreement to that suspension. Because Glazers knew his misrepresentation or omission would likely induce the Commission's assent, it was material.

## IV. CONCLUSION

Glazers and his company made $200,000 by conning consumers, then he sheltered the vast majority by deceiving the FTC. For the reasons stated herein, the Court should lift the suspension and hold Glazers liable for the full $200,000 judgment, less amounts already paid and plus interest accruing from February 25, 2014.[13]

Dated: October 12, 2016

Respectfully submitted,

/s/ Colin D. A. MacDonald
COLIN D. A. MACDONALD*
STEVEN M. WERNIKOFF
JAMES H. DAVIS
Federal Trade Commission
600 Pennsylvania Ave. NW
Mailstop CC-9528
Washington, DC 20580
(202) 326-3192, cmacdonald@ftc.gov
(312) 960-5630, swernikoff@ftc.gov
(312) 960-5611, jdavis@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

* Colin D. A. MacDonald is not a member of the Bar of this Court. His application for admission *pro hac vice* is filed contemporaneously with this motion. Steven M. Wernikoff is a member of the Trial Bar of this Court and James H. Davis is a member of the Bar of this Court.

---

[13] The FTC is prepared to consolidate the hearing on this motion with the hearing on the preliminary injunction that the Commission requests in its simultaneously filed *Ex Parte* Motion for Temporary Restraining Order Containing Asset Freeze and Limited Expedited Discovery, and Order to Show Cause why a Preliminary Injunction Should Not Issue. *See* Fed. R. Civ. P. 65(a)(2).